NO. 19-30766

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

DENISE A. BADGEROW,

*Plaintiff-Appellant*

v.

GREG WALTERS; THOMAS MEYER; RAY TROSCLAIR,

*Defendants-Appellees*

---

*On Appeal From*
*The United States District Court*
*For The Eastern District Of Louisiana*

---

BRIEF OF APPELLEES, GREG WALTERS,
THOMAS MEYER AND RAY TROSCLAIR

---

E. Fredrick Preis, Jr. (La. Bar No. 10704)
Eve B. Masinter (La. Bar No. 1218)
Matthew M. McCluer (La. Bar No. 33970)
BREAZEALE, SACHSE & WILSON, L.L.P.
First Bank & Trust Tower
909 Poydras Street, Suite 1500
New Orleans, Louisiana 70112-4004
Telephone: (504) 619-1800
Facsimile: (504) 584-5452
*Counsel for Appellees Greg Walters,*
*Thomas Meyer and Ray Trosclair*

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1. Greg Walters, Appellee;
2. Thomas Meyer, Appellee;
3. Ray Trosclair, Appellee;
4. E. Fredrick Preis, Jr., Eve B. Masinter, Matthew M. McCluer and the law firm of Breazeale, Sachse & Wilson, LLP, counsel for Appellees;
5. Denise Badgerow, Appellant;
6. Amanda Butler Schley and the Business Law Group, counsel for Appellant;
7. Hon. Jay C. Zainey, United States District Judge, United States District Court for the Eastern District of Louisiana;
8. Hon. Joseph C. Wilkinson, Jr., United States Magistrate Judge, United States District Court for the Eastern District of Louisiana.

*/s/ Eve B. Masinter*
Eve B. Masinter
*Counsel for Appellees Greg Walters,*
*Thomas Meyer and Ray Trosclair*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully suggest to this Court that oral argument will not benefit the panel. The resolution of the issues presented are clear given the law and record evidence and the pertinent facts and legal arguments set forth in the briefs, making oral argument unnecessary. However, should this Court determine that oral argument is needed; the undersigned stands ready to proceed.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ..................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............................1

STATEMENT OF THE CASE..........................................................................2

SUMMARY OF THE ARGUMENT ....................................................................12

ARGUMENT ..........................................................................................14

*STANDARD OF REVIEW* ..........................................................................14

**I. Badgerow's Claims in the Underlying Arbitration Raised Substantial Issues of Federal Law**.......................................................14

A. The District Court properly extended *Vaden*'s look through analysis to the Action to Vacate. ........................................................15

B. The FINRA arbitration claims involved substantial questions of federal employment law. ..................................................20

C. The FINRA arbitration claims involved substantial questions of federal securities laws. ....................................................21

*i. Badgerow's state law whistleblower claim necessarily raises and relies on federal securities laws.* .................................22

*ii. The questions of federal law presented are substantial.* ................26

*iii. The District Court's exercise of jurisdiction over alleged violations of federal securities laws properly supports the balance of state and federal judicial responsibilities.* ...................32

D. Artful pleading and lack of a federal private cause of action cannot divest the district court of federal question jurisdiction. .........34

*i. Artful pleading to avoid federal jurisdiction* .................................34

*ii. The absence of a private right of action is not the issue*...............37

**II. Issues of Federal Law Appear on the Face of Badgerow's State Court Pleadings.** .....39

**III. Continuing Jurisdiction Existed Over the Action to Vacate Due To the Earlier Referral to Arbitration of Badgerow's Federal Employment Law Joint Employer Claims.** .....41

**IV. Badgerow Has Waived the Right to Appeal the Grant of The Principals' Motion to Confirm the FINRA Award and the Dismissal of Her Action to Vacate.** .....44

CONCLUSION .....45

CERTIFICATE OF SERVICE .....46

CERTIFICATE OF COMPLIANCE .....47

## TABLE OF AUTHORITIES

### CASES

*Allen v. Walmart Stores, LLC*,
907 F.3d 170 (5th Cir. 2018) .......... 14

*Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emp. of Am., Div. No. 1127 v. S. Bus Lines*, 189 F.2d 219 (5th Cir. 1951) .......... 22

*Bobo v. Christus Health*,
359 F. Supp. 2d 552 (E.D. Tex. 2005) .......... 22, 34, 35, 37

*Bosky v. Kroger Tex., LP*,
288 F.3d 208 (5th Cir. 2002) .......... 14, 15

*Citadel Sec., LLC v. Chicago Bd. Options Exch., Inc.*,
808 F.3d 694 (7th Cir. 2015) .......... 26

*Coleman v. Louisville Pants Corp.*,
691 F.2d 762 (5th Cir. 1982) .......... 22, 35

*Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*,
529 U.S. 193, 201 (2000) .......... 19

*Dervan v. Gordian Grp. LLC*,
No. 16-CV-1694, 2017 WL 819494 (S.D.N.Y. Feb. 28, 2017) .......... 25

*Doscher v. Sea Port Grp. Sec., LLC*,
832 F.3d 372 (2d Cir. 2016) .......... passim

*Eastman v. Marine Mech. Corp.*,
438 F.3d 544 (6th Cir. 2006) .......... 38

*Ford v. Hamilton Investments, Inc.*,
29 F.3d 255 (6th Cir. 1994) .......... 26, 27, 45

*Goldman v. Citigroup Glob. Markets Inc.*,
834 F.3d 242 (3d Cir. 2016) .......... 19

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) .......... 22, 24, 38

*Gunn v. Minton*,
568 U.S. 251 (2013) .......... 15

*Gully v. First Nat'l Bank*,
299 U.S. 109 (1936) .......... 22

*Hall St. Associates v. Mattel, Inc.*,
552 U.S. 576 (2008) ....................................................................................18

*Harrison, v. Christus St. Patrick Hosp.*,
432 F. Supp. 2d 648 (W.D. La. 2006) ................................................ 34, 35, 36

*Hornbeck Offshore Servs., LLC v. Salazar*,
713 F.3d 787 (5th Cir. 2013).......................................................................45

*Howery v. Allstate Ins. Co.*,
243 F.3d 912 (5th Cir. 2001).......................................................................36

*Jones v. Norfolk S. Co.*,
348 F. App'x 970 (5th Cir. 2009)..................................................................21

*Jones v. TV Minority Co.*,
No. 07-513, 2008 WL 4279581 (S.D. Miss. Sept. 11, 2008)..............................21

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ....................................................................................14

*Landau v. Eisenberg*,
922 F.3d 495 (2d Cir. 2019) ................................................................. 15, 17, 19

*Luckett v. Delta Airlines, Inc.*,
171 F.3d 295 (5th Cir. 1999).......................................................................14

*Magruder v. Fid. Brokerage Servs. LLC*,
818 F.3d 285 (7th Cir. 2016).......................................................................19

*Manguno v. Prudential Prop. & Cas. Ins. Co.*,
276 F.3d 720 (5th Cir. 2002).......................................................................14

*Mansfield, C. & L.M. Ry. Co. v. Swan*,
111 U.S. 379 (1884) ....................................................................................14

*Marine Transit Corp v. Drefus*,
284 U.S. 263 (1932) ....................................................................................43

*McCormick v. Am. Online, Inc.*,
909 F.3d 677 (4th Cir. 2018)................................................................... passim

*Merrell Dow Pharmaceuticals Inc. v. Thompson*,
478 U.S. 804 (1986) ............................................................................ 14, 36, 38

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*,
136 S. Ct. 1562 (2016)........................................................................... passim

*Move, Inc. v. Citigroup Global Markets, Inc.*,
840 F.3d 1152 (9th Cir. 2016)........................................................................44

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014)........................................................ 29, 30, 31, 32

*Nathan v. Carter*,
372 So. 2d 560 (La. 1979)............................................................................44

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*,
671 F.3d 526 (5th Cir. 2012)..........................................................................45

*Oliver v. Trunkline Gas Co.*,
796 F.2d 86 (5th Cir. 1986)...................................................................... 38, 39

*Ortiz-Espinosa v. BBVA Sec. of Puerto Rico, Inc.*,
852 F.3d 36 (1st Cir. 2017) ........................................................ 15, 17, 18, 19

*Plains Capital Bank v. Rogers*,
715 F. App'x 325 (5th Cir. 2017)...................................................................35

*Rittinger v. Healthy Alliance Life Ins. Co.*,
914 F.3d 952 (5th Cir. 2019)..........................................................................45

*Singh v. Duane Morris LLP*,
538 F.3d 334 (5th Cir. 2008)..........................................................................15

*Smith v. Kansas City Title & Trust Co.*,
255 U.S. 180 (1921) ................................................................................. 17, 24

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
159 F.3d 1209 (9th Cir. 1998)........................................................................26

*Turbeville v. Fin. Indus. Regulatory Auth.*,
874 F.3d 1268 (11th Cir. 2017)................................................... 27, 28, 31, 32

*Turbine Powered Tech. LLC v. Crowe*,
2018 WL 1041815 (W.D. La. Feb. 14, 2018)...............................................35

*Vaden v. Discover Bank*,
556 U.S. 49 (2009) ................................................................................. passim

*Willis v. Cleco Corp*,
749 F.3d 314 (5th Cir. 2014) .......................................................................45

*Willy v. Coastal Corp.*,
855 F.2d 1160 (5th Cir. 1988)........................................................................15

**STATUTES**

9 U.S.C. § 9–11 .......... 3, 5, 7, 17, 45
15 U.S.C. § 78a .......... 24, 26
15 U.S.C. § 78c(a)(4)(A), (5)(A) .......... 26
15 U.S.C. § 78o-3(b)(6) .......... 32
15 U.S.C. § 78q .......... 26
15 U.S.C. § 78s(g)(1)(B) .......... 31
28 U.S.C. § 1331 .......... 1, 8, 12, 14
28 U.S.C. § 1446 .......... 15
29 U.S.C. § 206(d) .......... 5
42 U.S.C. § 2000e, *et seq.* .......... passim
17 C.F.R. § 240.10b-5 .......... 17
17 C.F.R. § 240.17a-3 .......... 5, 26, 39
La. Rev. Stat. § 23:301 .......... 5
La. Rev. Stat. § 23:967 .......... 34
La. Rev. Stat. § 9:4210 .......... 11, 20
La. Rev. Stat. § 9:4201 .......... 34
La. Admin. Code Title 10, Pt. XIII, § 1701 .......... 36
Fed. R. Civ. P. 12(b)(6) .......... 6
FINRA Rule 13505 .......... 29, 30
FINRA Rule 2040 .......... passim

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the District Court correctly hold that Appellant's state court Action to Vacate an arbitration award issued by FINRA was properly removed pursuant to 28 U.S.C. § 1331, given the substantial issues of federal law present in the claims adjudicated in the underlying arbitration dispute, and applying the "look through" analysis endorsed by the First, Second and Fourth Circuits?

2. Was Appellant's state court Action to Vacate an arbitration award, based entirely on her allegation that Appellees fraudulently misrepresented the requirements of federal securities laws and regulations, properly removed pursuant to 28 U.S.C. § 1331, given the presence of substantial issues of federal securities law on the face of the Action to Vacate?

3. Did the District Court maintain continuing federal question jurisdiction over Appellant's Action to Vacate under 28 U.S.C. § 1331, after previously staying and ordering to arbitration Appellant's federal Title VII and Equal Pay Act claims brought against Ameriprise Financial Services, Inc. as an alleged joint employer with Appellees?

## STATEMENT OF THE CASE

Appellant, Denise Badgerow ("Badgerow") is a licensed Associate Financial Advisor ("AFA") and a registered member of the Financial Industry Regulatory Association ("FINRA"). (ROA.24.) Appellees, Greg Walters ("Walters"), Thomas Meyer ("Meyer"), and Ray Trosclair ("Trosclair") (Walters, Meyer and Trosclair collectively "the Principals"), are licensed Financial Advisors and members of FINRA. (ROA.24.) The Principals are franchisees of Ameriprise Financial Services, Inc. ("Ameriprise"). (ROA.24.) Badgerow was employed by REJ Properties, Inc. d/b/a Walters, Meyer, Trosclair & Associates ("REJ"), a financial advising group operated by the Principals, from January 6, 2014 until her termination on July 26, 2016. (ROA.24, 28.)

As a new employee of REJ, Badgerow signed an AFG Registered Staff Agreement ("AFG Agreement") on January 6, 2014 and an Associate Financial Advisor Agreement ("AFA Agreement") on March 19, 2014. (ROA.195-96, 151-60 (AFG Agreement), 161-166 (AFA Agreement).) Both agreements included provisions (Section 9.A.) requiring arbitration of any claim against Ameriprise and the Principals arising out of Badgerow's employment, providing that "[u]nless otherwise agreed to in writing by both parties, you agree to arbitrate any dispute, claim or controversy that may arise between you and Ameriprise Financial or its

Affiliates, or a Client, or any other person, ("Claims")[.]" (ROA.157-58, 165.) Section 9.I. of the AFG Agreement and the AFA Agreement specifically stated that the agreed-to arbitration of claims was covered by and enforceable under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"). (ROA.157-58, 165, 1460-61 n.6.) Further, Section 9.F. permitted either party to compel arbitration and seek judicial enforcement of any arbitration decision. (ROA.157-58, 165.) Badgerow indicated her written consent to the arbitration agreements in both the AFG Agreement and the AFA Agreement. (ROA.159, 166.)

Badgerow also signed a Uniform Application for Securities Industry Registration or Transfer, or "U4 Form," which is required by FINRA in order for a registered broker-dealer to conduct business in a specified jurisdiction (here, Louisiana). (ROA.223-37.) The U4 Form, Section 15A., states "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs [Self-Regulatory Organizations] indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction." (ROA.236.)

On or about October 17, 2016, Badgerow filed a Statement of Claim with FINRA, commencing an arbitration proceeding against Ameriprise and the Principals. (ROA.1534-42.) Counsel for each party signed documents entitled FINRA Arbitration Submission Agreement ("Submission Agreement"), which stated, *inter alia*, that (1) the parties agreed to submit to FINRA arbitration; (2) they had read, were familiar with, and agreed to be bound by the FINRA rules and procedures concerning arbitration; and (3) they agreed to abide by and perform any award rendered by the arbitrators. (ROA.238-41.) The Submission Agreements specifically stated: "The parties further agree that a judgment and any interest due thereupon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment." (ROA.238-41.)

In her original FINRA Statement of Claim, Badgerow asserted violations of the Securities and Exchange Act of 1934 ("Exchange Act") (specifically §§ 15 & 17), SEC regulations and FINRA rules, as well as state law claims related to Badgerow's employment with and termination from REJ. (ROA.1534-42.) Badgerow amended her Statement of Claim in the FINRA proceeding on April 13, 2018 (ROA.1562-78), and filed a Second Amended Statement of Claim on June 22, 2018 (ROA.168-86), after the federal law joint employer claims were ordered to

arbitration, as discussed *infra*, by the Honorable U.S. District Judge Jay C. Zainey (hereinafter "Judge Zainey" or "the District Court"). Both amended Statements of Claim maintained claims arising under the Exchange Act, regulations of the Securities and Exchange Commission ("SEC"), and FINRA rules. (ROA.168-86, 1568-78.) Specifically, Badgerow's Statement of Claim contained an entire section entitled "*The Company's Unwritten Compensation Agreement and Payment Method of Commissions Violated SEC and FINRA regulations*," alleging that Badgerow's manner of compensation violated §§ 15 and 17 of the Exchange Act, SEC Rule 17a-3 (17 C.F.R. § 240.17a-3), and FINRA Rule 2040. (ROA.174-179.)

On September 22, 2017, Badgerow filed suit in the United States District Court for the Eastern District of Louisiana against Ameriprise and REJ, alleging gender discrimination and harassment claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Louisiana Employment Discrimination Law, La. Rev. Stat. § 23:301, *et seq.* ("LEDL"), retaliation under Title VII, and, discriminatory pay under the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), seeking individual and class relief, and a state law claim for breach of contract. (ROA.19-30584.23-36.) She further alleged that Ameriprise and REJ were joint employers for purposes of her federal employment claims. (ROA.19-30584.34-35.) That suit, which is the subject of a separate appeal in this Court (No. 19-30584) is styled "*Denise A. Badgerow, on*

*behalf of herself and a class of those similarly situated, v. REJ Properties, Inc. d/b/a Walters Meyer Trosclair & Associates, and Ameriprise Financial Services, Inc.*," E.D. La., No. 2:17-cv-09492 ("the REJ Suit").

On November 28, 2017, REJ filed, pursuant to the FAA, a Motion to Dismiss the REJ Suit pursuant to Fed. R. Civ. P. 12(b)(6) and to Compel Arbitration of Badgerow's claims by FINRA as required by the aforementioned arbitration agreements. (ROA.19-30584.101-28.) Ameriprise filed its own Motion to Dismiss and Compel Arbitration on the same day seeking the same relief. (ROA.19-30584.160-84.) On January 10, 2018, Judge Zainey issued an Order denying REJ's request to refer the claims to arbitration, holding that REJ was not a party to any of the arbitration agreements. (ROA.19-30584.367-71, 373-75.) The District Court granted Ameriprise's Motion, staying and directing the claims against it to FINRA arbitration. (ROA.19-30584.367-75.)

Prior to the arbitration proceeding, the Principals filed Motions to Dismiss the claims against them before FINRA, intending for the motions to be considered at the conclusion of Badgerow's arbitration case-in-chief. (ROA.1775-86.) The arbitration proceeded on August 27-28, 2018. After the hearing, the panel of three arbitrators orally dismissed the joint employer claims against Ameriprise and requested that the parties submit additional briefing regarding their Motions to Dismiss, which briefing

was filed on October 4, 2018 by the Principals and on October 18, 2018 by Badgerow. (ROA.132.) The FINRA panel then held an additional hearing on the Motions to Dismiss on November 20, 2018. (ROA.132.) On December 27, 2018, the FINRA panel issued an Award ("FINRA Award") dismissing Badgerow's claims against the Principals and Ameriprise with prejudice, including the Title VII and EPA joint employer claims. (ROA.128-37.)

On April 17, 2019, Ameriprise moved in the REJ Suit—in which the claims against Ameriprise were stayed pending the arbitration—to confirm the FINRA Award, citing to § 9 of the FAA as the basis for confirmation.[1] (ROA.19-30584.5507-64.) REJ filed a Memorandum in Support of Ameriprise's Motion to Confirm. (ROA.19-30584.5676-96.) Badgerow opposed the Motion to Confirm based on alleged fraud and undue means committed by the Principals as to the representation of their duties under the Exchange Act. (ROA.19-30584.5697-5702, 5848-50.) Badgerow asked the District Court to confirm the FINRA Award only as to Ameriprise and to exclude the Principals, despite the fact that the Principals were parties to the arbitration and the Award expressly dismissed all claims against them. (ROA.19-30584.5697-5702.)

[1] As Ameriprise and REJ contended, § 9 of the FAA requires that "the court must grant such an order [confirming the award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.

On May 6, 2019, while the Motion to Confirm was pending before the District Court, Badgerow filed an "Action to Vacate Arbitration Award" ("Action to Vacate") in Civil District Court for the Parish of Orleans against the Principals. (ROA.21-42.) That Action to Vacate argued that the FINRA Award should be vacated because the Principals allegedly committed fraud by misrepresenting to the FINRA panel multiple requirements of federal securities laws, SEC regulations, and FINRA rules. (ROA.21-42; ROA.19-30584.5848-50.) The sole support provided for the fraud claim was marketing proposals from a third-party payroll company, EmployShare, which Badgerow claimed proved that the Principals' interpretation of the applicable securities laws, regulations and rules at issue in the FINRA arbitration was false. (ROA.21-42, 99-113.) As Judge Zainey determined in his June 12, 2019 Order and Reasons confirming the Award, the EmployShare documents Badgerow relied on were little more than a marketing "sales pitch" from a vendor seeking the Principals' business, and in no way supported her claim that the FINRA Award was procured by fraud. (ROA.19-30584.5849-50.)

On May 13, 2019, the Principals removed the Action to Vacate to the United States District Court for the Eastern District of Louisiana based on federal question jurisdiction under 28 U.S.C. § 1331, stating in their Notice of Removal the facts and law supporting the exercise of federal jurisdiction. (ROA.7-19.) The Principals

noted in the removal that this case was related to another case before Judge Zainey, in which he was presiding over a pending Motion to Confirm the same FINRA Award that Badgerow was seeking to vacate. (ROA.20.) The removed suit, which is the subject of this Appeal, is styled *"Denise A. Badgerow v. Greg Walters, Thomas Meyer, and Ray Trosclair,"* E.D. La., No. 2:19-cv-10353 ("the Instant Suit"). The Instant Suit was transferred to Judge Zainey on May 14, 2019. (ROA.191.)

The Principals filed a Motion to Confirm the FINRA Award on May 20, 2019. (ROA.193-200.) Badgerow then moved to remand the Instant Suit to state court on May 29, 2019, raising the same flawed arguments presented in her Brief to this Court—primarily, that she had not based her Action to Vacate on federal law, but rather on the state arbitration act and one of her state law claims, and that the District Court should not adopt the "look through" approach, endorsed by a plurality of the Federal Circuits, in addressing whether substantial questions of federal law were present in her claims in the underlying arbitration proceeding. (ROA.1195-1224.)

On June 12, 2019, Judge Zainey issued his Order and Reasons in the REJ Suit granting Ameriprise's Motion to Confirm the FINRA Award without limitation or qualification. (ROA.19-30584.5846-51.) The District Court roundly rejected the claim that the Award was procured by fraud or undue means, stating:

> Badgerow's fraud defense to confirmation of the award is legally frivolous. The Court begins by noting that the "smoking gun" that

> Badgerow recently received in discovery is actually a marketing or sales document produced by a vendor that sells commission paying software/services to companies like WMT. (Rec. Doc. 153-1 Exhibits I & J). The whistleblower statute requires proof of an actual violation of law; even a good faith belief that a violation occurred is insufficient. It is utterly absurd to suggest that a marketing proposal that contained legal opinions formed by marketers trying to persuade companies to buy their product established an actual violation of law. Badgerow presented the facts of her case to the arbitrators and her attorneys argued the specific violations of the law that allegedly occurred. Badgerow did not prove her case. It is ludicrous of Badgerow to suggest that she failed to prove her claim because the arbitrators did not have the benefit of the assertions contained in a vendor's sales pitch or that those assertions establish that an actual violation of the law occurred. The documents upon which Badgerow hinges her fraud theory are irrelevant to any element of her whistleblower claim.

(ROA.19-30584.5849.) (citations omitted). The District Court unambiguously held under the FAA that "[t]he arbitration award is confirmed as to all parties to that proceeding." (ROA.19-30584.5851.)

On June 26, 2019, Judge Zainey issued an Order and Reasons in the Instant Suit, denying Badgerow's Motion to Remand the suit to state court. (ROA.1457-62.) Applying the "look through" analysis endorsed by the Supreme Court in *Vaden v. Discover Bank*, 556 U.S. 49, 66 (2009) to examine the claims in the underlying arbitration, Judge Zainey determined that the District Court had federal question jurisdiction based on the Title VII and EPA joint employer claims that he had ordered to arbitration in the REJ Suit, which were fully adjudicated and dismissed in

the arbitration. (ROA.1457-62.) Judge Zainey granted the Principals' Motion to Confirm the FINRA Award and dismissed Badgerow's Action to Vacate, stating:

> Given that the Court has already considered and rejected Badgerow's fraud challenge to the arbitration award, the sole question before the Court is whether it has subject matter jurisdiction over the removed action so as to grant the Principals' motion to confirm the award and enter a final judgment in their favor.
>
> . . . . Badgerow filed suit in state court relying on La. Rev. Stat. § 9:4210 to vacate the award. Badgerow's position is that the petition only involves state law because she only seeks to vacate the award with respect to the state law whistleblower claim. To the contrary, the award was based on state law as well as federal law because Badgerow included as part of the arbitration her joint employer claims that were grounded on federal employment law. This Court is persuaded that Badgerow cannot deprive the Court of subject matter jurisdiction over an action to vacate the award by stripping off a single state law claim as a basis for attacking the award. Because the award itself included federal claims, the Court is persuaded that federal question jurisdiction applies notwithstanding the artfully pleaded petition.

(ROA.1459-61.) (footnotes omitted).

On June 27, 2019 Judge Zainey entered a final Judgment confirming the FINRA Award and dismissing Badgerow's claims in the Action to Vacate with prejudice. (ROA.1463.) Badgerow filed a Motion to Alter or Amend the Judgment on July 26, 2019, which was denied on August 21, 2019. (ROA.1464-77, 1813.) Badgerow filed her Notice of Appeal on September 17, 2019. (ROA.1814–15.) As Badgerow provides no legal or factual basis for this Court to reverse the District Court's well-reasoned ruling, the decision below should be affirmed.

## SUMMARY OF THE ARGUMENT

The Action to Vacate was properly removed pursuant to 28 U.S.C. § 1331 for three reasons. First, the District Court properly applied the "look through" analysis endorsed by the Supreme Court for motions to compel arbitration under § 4 of the FAA, and extended by the First, Second and Fourth Circuits to include motions to confirm, modify and vacate arbitration awards under §§ 9–11 of the FAA. In doing so, Judge Zainey correctly held that adjudication of Badgerow's joint employer claims required the application and interpretation of Title VII and the EPA, federal laws prohibiting employers from discrimination, harassment, retaliation, and unequal pay against employees based on their gender. (ROA.1460-61.)

Moreover, Supreme Court jurisprudence establishes an overriding federal interest in exercising jurisdiction over state law claims involving significant questions of federal securities laws. Badgerow's claims in the arbitration relied on §§ 15 and 17 of the Exchange Act, corresponding SEC regulations setting forth the books-and-records requirements applicable to registered broker-dealers, and FINRA Rule 2040 governing payments by registered members of FINRA to unregistered persons or entities. (ROA.1534-42, 1568-78, 168-86.) Her claims were based on allegations that duties established by these laws and regulations were breached by the Principals. (ROA.1534-42, 1568-78, 168-86.) Federal courts have held that §§

15 and 17 of the Exchange Act and FINRA Rule 2040 constitute substantial questions of federal law supporting federal question jurisdiction.

Second, subject matter jurisdiction existed over Badgerow's Action to Vacate because her state court pleadings on their face raised substantial questions of federal law. The sole argument for vacating the FINRA Award was that it was procured through fraud or undue means because the Principals allegedly falsely represented to the FINRA panel that their method of compensating AFAs through a non-broker-dealer entity complied with the Exchange Act and FINRA Rule 2040. (ROA.21-42.) Thus, the Action to Vacate was facially premised on federal law.

Third, the District Court held continuing jurisdiction over Badgerow's Action to Vacate the FINRA Award since Judge Zainey had previously ordered the joint employer claims to arbitration and stayed the remaining claims as to Ameriprise. (ROA.19-30584.367-75.) In a brazen act of forum shopping and in circumvention of the District Court's jurisdiction, Badgerow filed the Action to Vacate in state court as Judge Zainey was considering confirmation of the FINRA Award in the REJ Suit. (ROA.21-42; ROA.19-30584.5507-63.)

For these reasons, this Court should affirm the District Court's decision denying the Motion to Remand, confirming the FINRA Award in favor of the Principals, and dismissing the Action to Vacate with prejudice.

## ARGUMENT

***STANDARD OF REVIEW***

A district court's denial of a motion to remand is reviewed *de novo*. *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 182 (5th Cir. 2018); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (*citing Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).

### I. Badgerow's Claims in the Underlying Arbitration Raised Substantial Issues of Federal Law.

The Supreme Court has held that federal question jurisdiction under 28 U.S.C. § 1331 exists over a motion to compel arbitration if "the entire, actual controversy between the parties, as they have framed it, could be litigated in federal court." *Vaden v. Discover Bank*, 556 U.S. 49, 66 (2009) (emphasis added, internal quotation marks omitted). Thus, federal courts have subject matter jurisdiction over a motion to compel arbitration when it states a claim "arising under" federal law—which has been interpreted broadly to encompass "all cases in which a federal question is 'an ingredient' of the action." *See Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 807 (1986) (additional citation omitted).[2]

[2] Badgerow cites to several cases that address issues of diversity jurisdiction or whether the court properly retained federal jurisdiction through enforcement of a settlement agreement, neither of which is at issue in this Appeal. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720 (5th Cir. 2002); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884). Badgerow also cites to *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir.

A. <u>The District Court properly extended *Vaden*'s look through analysis to the Action to Vacate.</u>

After *Vaden*, several Federal Circuit Courts of Appeals have examined whether to extend the look through analysis from motions to compel arbitration under § 4 of the FAA to motions to confirm or vacate under §§ 9 and 10, respectively. A majority of the Circuits have concluded that the look through analysis should be extended to motions to confirm and vacate. *See Landau v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019) (applying look through analysis to motion to confirm arbitration award); *accord, Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 382 (2d Cir. 2016) (motion to vacate); *McCormick v. Am. Online, Inc.*, 909 F.3d 677, 682 (4th Cir. 2018) (motion to vacate); *Ortiz-Espinosa v. BBVA Sec. of Puerto Rico, Inc.*, 852 F.3d 36, 47 (1st Cir. 2017) (motion to vacate or modify).

In its 2016 ruling, the Second Circuit extended the look through analysis to motions to vacate and modify arbitration awards. *Doscher*, 832 F.3d at 374. In

---

2002) to support her remand argument. *Bosky* is inapplicable because the court there considered the more stringent removal provisions of 28 U.S.C. § 1446(b), applicable when amended pleadings or motions establish the grounds for removal, rather than 28 U.S.C. § 1446(a), which applies when the initial filing sets forth the grounds for removal to federal court, as is the case here.

The *Gunn* and *Singh* cases cited by Badgerow are inapposite as well, as they were state legal malpractice cases, and the federal law issues tangentially involved were trademark and a hypothetical patent issue. As noted by those courts, legal malpractice has traditionally been the domain of state law, and federal law rarely interferes with the power of the states to regulate the practice of law. *See Gunn v. Minton*, 568 U.S. 251, 264 (2013); *Singh v. Duane Morris LLP*, 538 F.3d 334, 339–40 (5th Cir. 2008). The same is true for the *Willy* case cited by Badgerow, where the predominant issues were attorney conduct and the state law regulation of an employment relationship raised by a wrongful discharge claim based solely on Texas common law. *See Willy v. Coastal Corp.*, 855 F.2d 1160, 1171 (5th Cir. 1988).

*Doscher,* as in the case *sub juris*, the underlying arbitration included claims under the Exchange Act and SEC rules. *Id*. (ROA.19-30584.5848-50.) The Second Circuit extended *Vaden* based on the federal interest in maintaining a consistent jurisdictional framework across different statutory provisions and avoiding the "curious practical consequences" that the *Vaden* Court sought to avoid if the look through analysis was rejected, namely, that such a rule "would permit a federal court to entertain a § 4 petition only when a federal-question suit is already before the court, when the parties satisfy the requirements for diversity-of-citizenship jurisdiction, or when the dispute over arbitrability involves a maritime contract." *Doscher*, 832 F.3d at 380–81 (*quoting Vaden*, 556 U.S. at 65).

After holding that the look through analysis applied to the motion to vacate at issue, the Second Circuit remanded the case to the district court. *Id.* On remand, the trial court exercised federal question jurisdiction and denied the motion to vacate and modify. *Doscher v. Sea Port Grp. Sec., LLC,* No. 15-CV-384, 2017 WL 6061653, at *6 (S.D.N.Y. Dec. 6, 2017), *aff'd,* 752 F. App'x 102 (2d Cir. 2019). The Second Circuit then affirmed the trial court's decision on February 12, 2019. *Doscher v. Sea Port Grp. Sec., LLC*, 752 F. App'x 102, 103 (2d Cir. 2019). In a recent 2019 decision, the Second Circuit further extended *Vaden*'s look through analysis to a motion to confirm an arbitration award and found that the federal

trademark claims in the underlying arbitration conferred federal jurisdiction to rule on the motion to confirm. *Landau*, 922 F.3d at 498.

In *Ortiz-Espinosa*, the First Circuit considered a motion to vacate an arbitration award that had dismissed the underlying arbitration, which included alleged violations of Section 10(b) of the Exchange Act, SEC Rule 10b-5, and the securities laws of Puerto Rico. *Ortiz-Espinosa*, 852 F.3d at 40. The motion to vacate itself was based on alleged arbitrator bias and various state law violations, yet the First Circuit utilized the look through approach to examine the claims in the arbitration dispute, and concluded that "there is no question that claimants' claims involving federal securities laws arise under federal law." *Id.* at 47.

The First Circuit noted that while the *Vaden* Court partially based its ruling on the statutory text in 9 U.S.C. § 4, the fact that the text of 9 U.S.C. §§ 9–11 differs from § 4 was not alone sufficient to interpret the statutes differently. *Id*. at 45 (*citing Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1570 (2016)). The *Ortiz-Espinosa* Court noted that Congress clearly intended federal jurisdiction over motions to confirm and vacate because Congress added these post-award remedies to the statutory text of the FAA. *Id.* at 46. Further, the First Circuit found that its ruling fostered a "unitary jurisdictional approach to the FAA" and comported with *Vaden*'s focus on avoiding inconsistent jurisdictional decisions,

which would surely result if a federal court were to hear a motion to compel arbitration but subsequent motions to confirm or vacate the award were permitted to be brought in state court. *Id.* at 47. The *Ortiz-Espinoza* Court also held that a reviewing court in post-arbitration proceedings may be called to interpret federal laws in determining whether evidence is material to the federal controversy. *Id.*

Interestingly, the *Ortiz-Espinoza* situation is strikingly similar to the one here in other respects. There the claimants sued to vacate a FINRA arbitration award in state court under the state arbitration law rather than the FAA. Applying the look through analysis, the federal district court determined that their claims of violations of SEC laws and regulations supported federal question removal jurisdiction.[3]

The Fourth Circuit has also extended *Vaden* to motions to confirm, modify or vacate arbitration awards. *See McCormick*, 909 F.3d at 682. Applying the look through analysis, the *McCormick* Court found that the plaintiff's arbitration claims arose under the Stored Communications Act, clearly requiring resort to federal law and vesting the court with federal question jurisdiction. In so holding, the Fourth Circuit, as the First and Second Circuits had done previously, aimed to support the

[3] Moreover, citing to the Supreme Court opinion in *Hall St. Associates v. Mattel, Inc.*, 552 U.S. 576, 590 (2008), the *Ortiz-Espinoza* Court determined that the FAA, not the state arbitration act, applied to enforcement of the FINRA Award based on the applicable arbitration agreements which did not displace the FAA. This is reason alone to reject Badgerow's disingenuous argument that she could move to vacate under the state arbitration law where the FINRA Arbitration and Award were pursuant to the FAA as stipulated in agreements she signed.

policy goals of the FAA and the overriding judicial interest in avoiding inconsistencies in litigation, noting that the pre-award and post-award provisions of the FAA should be interpreted consistently in order to give proper effect to the statute and promote its purpose of favoring arbitration. *Id.* As the Court held:

> . . . [O]ur holding has the added virtue of applying a uniform jurisdictional approach to the FAA as an integrated whole. In this vein, the Supreme Court has rejected interpretations of the FAA that result in "needless tension" between the Act's pre-award and post-award provisions. *See Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 201, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000). Applying the "look through" approach to § 4 but not to § 10 or § 11 would create just such a tension by subjecting the Act's pre-award and post-award remedies to different jurisdictional inquiries, potentially by different courts, during different stages of the same arbitration.

*Id.* at 682.[4]

This Court should adopt the near-identical reasonings of *Doscher*, *Landau*, *Ortiz-Espinoza*, and *McCormick,* as opined by the District Court, that the look through analysis properly extends to motions to vacate and confirm arbitration

---

[4] The two circuit courts that have declined to extend the look through analysis both did so based on an overly textual reading of the FAA and *Vaden. See Magruder v. Fid. Brokerage Servs. LLC,* 818 F.3d 285, 288 (7th Cir. 2016); *Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 254 (3d Cir. 2016). Rejecting this rationale, the Fourth Circuit stated in *McCormick*:

> While some courts have reasoned that the FAA's policy of enforcing valid agreements to arbitrate suggests that the federal interest in compelling arbitration under § 4 is greater than the federal interest in confirming, vacating, or modifying awards under §§ 9–11 . . . we do not agree. The issues addressed by § 4 and §§ 9–11 are completely intertwined in carrying out Congress's decision to provide a set of federal rules governing the arbitration process. Privileging § 4 petitions over § 10 and § 11 motions for jurisdictional purposes thus reflects too narrow a view of the FAA's comprehensive role with respect to arbitration.

*McCormick*, 909 F.3d at 683–84.

awards in this Circuit. Allowing disproportionate access to federal courts, by basing subject matter jurisdiction on whether a party files a motion to compel arbitration versus a motion to confirm or vacate an arbitration award, undermines the Supreme Court's ruling in *Vaden* and will undoubtedly lead to inconsistent and duplicative litigation. The District Court's application of *Vaden*'s look through analysis should therefore be affirmed.

B. The FINRA arbitration claims involved substantial questions of federal employment law.

When this Court applies the look through analysis to Badgerow's claims in the FINRA arbitration, it becomes clear that the District Court properly exercised federal question jurisdiction because the federal statutes, regulations and rules asserted in the underlying arbitration (and also on the face of the state court pleadings, as discussed *infra* at Section II) establish a substantial federal question conferring federal jurisdiction. In the Order and Reasons denying remand, Judge Zainey posited:

> The Fifth Circuit has not yet entered into the fray of this circuit split to determine whether the *Vaden* look through approach applies to § 10 motions to vacate. This Court will err on the side of assuming that the Fifth Circuit would apply the same jurisdictional standards to a motion to vacate an arbitration award that would apply to a motion to compel arbitration.
>
> That said, Badgerow filed suit in state court relying on La. Rev. Stat. § 9:4210 to vacate the award. Badgerow's position is that the petition only involves state law because she only seeks to vacate the

> award with respect to the state law whistleblower claim. To the contrary, the award was based on state law as well as federal law because **<u>Badgerow included as part of the arbitration her joint employer claims that were grounded on federal employment law</u>**…. Therefore, the motion to remand is denied.

(ROA.1460–61.) (emphasis added).

Thus, applying the look through analysis, Judge Zainey properly held that because Badgerow alleged in the FINRA arbitration that Ameriprise and the Principals were liable as joint employers for purposes of her federal Title VII and EPA claims of discrimination, harassment and retaliation, her claims were "grounded on federal employment law," which supplied the District Court with subject matter jurisdiction over the Action to Vacate.[5] (ROA.1457-62.)

C. <u>The FINRA arbitration claims involved substantial questions of federal securities laws.</u>

In addition, while not specifically relied on by the District Court, there are other compelling justifications for further determining via the look through analysis that federal question jurisdiction existed, as Badgerow's arbitration claims required extensive interpretation and application of federal securities laws. Although Judge Zainey did not base his exercise of jurisdiction on this ground, he certainly noted that it could be an additional basis for federal question jurisdiction. (ROA.1461 n.7.)

[5] Notably, the joint employer theory of liability must be tethered to a viable law, here Title VII and the EPA. *See, e.g., Jones v. TV Minority Co.,* No. 07-513, 2008 WL 4279581, at *5 (S.D. Miss. Sept. 11, 2008), *aff'd sub nom., Jones v. Norfolk S. Co.*, 348 F. App'x 970 (5th Cir. 2009) (holding that plaintiff failed to establish a genuine issue of material fact as to whether an entity was a joint employer for purposes of imposing liability under Title VII.)

As noted by the Supreme Court in *Grable*:

> The question is, does a state law claim **necessarily raise a stated federal issue**, **actually disputed and substantial**, which a federal forum may entertain without disturbing any congressionally approved **balance of federal and state judicial responsibilities**.

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, (2005) (emphasis added). The answer here is yes—application of the *Grable* three-factor analysis clearly results in federal question jurisdiction.

*i. Badgerow's state law whistleblower claim necessarily raises and relies on federal securities laws.*

The question of whether Badgerow's state law whistleblower claim asserted in the FINRA arbitration necessarily raises a federal issue "hinges on whether the federal right or obligation, as incorporated within a state law claim or claims, is 'such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.'" *Bobo v. Christus Health*, 359 F. Supp. 2d 552, 556 (E.D. Tex. 2005) (*quoting Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emp. of Am., Div. No. 1127 v. S. Bus Lines*, 189 F.2d 219, 222 (5th Cir. 1951), and *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)).[6] Here, whether the Principals breached their duties under federal securities

[6] S*ee also Coleman v. Louisville Pants Corp.*, 691 F.2d 762, 763 (5th Cir. 1982) (holding removal was proper where employees sued their employer and union in state court alleging state law tort claims, but resolution of those claims required analysis of the defendants' duties under the Federal Trade Act of 1974).

laws was the gravamen of Badgerow's arbitration claims and her state court action to vacate the FINRA Award. (ROA.19-30584.5848-50.)

In the underlying FINRA arbitration, Badgerow asserted in her initial Statement of Claim federal causes of action under §§ 15 and 17 of the Exchange Act, SEC Rules, and FINRA Rule 2040. (ROA.1536-37.) Additionally, Badgerow's state whistleblower claim asserted in the arbitration relied on a finding of a violation of these same federal laws. (ROA.1537-38). In Badgerow's Second Amended Statement of Claim, the first cause of action read: "*The Company's Unwritten Compensation Agreement and Payment Method of Commission Violated SEC and FINRA regulations*." (ROA.174-77.) The listed SEC and FINRA violations were § 15 of the Exchange Act, SEC Rule 17a-3, and FINRA Rule 2040. (ROA.174-77.) The FINRA panel, when listing the causes of action in the Award, cited these alleged federal violations as the first cause of action raised by Badgerow. (ROA.128-37.) As the District Court recognized, in considering the merits of Badgerow's allegations during the arbitration proceeding, the FINRA panel obviously analyzed these securities laws and considered their applicability to the facts of the case. (ROA.19-30584.5848-50.)

In 2016, the Supreme Court held that, in cases involving the Exchange Act, courts must apply the same "arising under" test for federal question jurisdiction to

determine whether federal law is “an ingredient’ of the action” *Merrill Lynch*, 136 S. Ct. at 1570. In *Merrill Lynch*, the Supreme Court first noted that § 27 of the Exchange Act provides that “the district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of . . . actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.” *Id.* (citing 15 U.S.C. § 78a). The Court then considered a state law cause of action with an embedded federal question involving the Exchange Act, and held:

> On rare occasions . . . a suit raising a state-law claim rises or falls on the plaintiff's ability to prove the violation of a federal duty. *See*, e.g., *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314–315, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005); *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201, 41 S.Ct. 243, 65 L.Ed. 577 (1921). **If in that manner, a state-law action necessarily depends on a showing that the defendant breached the Exchange Act, then that suit could also fall within § 27's compass.** Suppose, for example, that a state statute simply makes illegal “any violation of the Exchange Act involving naked short selling.” A plaintiff seeking relief under that state law must undertake to prove, as the cornerstone of his suit, that the defendant infringed a requirement of the federal statute. (Indeed, in this hypothetical, that is the plaintiff's only project.) **Accordingly, his suit, even though asserting a state-created claim, is also “brought to enforce” a duty created by the Exchange Act.**

*Id.* at 1569. (emphasis added). *Merrill Lynch* thus confirmed that where a claimed violation of the Exchange Act is inextricable from the plaintiff’s state law claim, there is a strong federal interest in allowing federal courts to resolve such claims “arising under” federal securities laws. Badgerow’s argument that she based her

whistleblower claim on a state regulatory provision "adopting" the Exchange Act and its regulations in whole is to no avail. Like the example the Supreme Court expounded on in *Merrill Lynch*, the violation of a duty established by a federal statute, the Exchange Act, is the cornerstone of Badgerow's claims.

FINRA Rule 2040(a) provides as follows:

> No member or associated person shall, directly or indirectly, pay any compensation, fees, concessions, discounts, commissions or other allowances to:
>
> (1) any person that is not registered as a broker-dealer under Section 15(a) of the Exchange Act but, by reason of receipt of any such payments and the activities related thereto, is required to be so registered under applicable federal securities laws and SEA rules and regulations; or
>
> (2) any appropriately registered associated person unless such payment complies with all applicable federal securities laws, FINRA rules and SEA rules and regulations.

FINRA Rule 2040(a) (available at: https://www.finra.org/rules-guidance/ rulebooks/finra-rules/2040) (last accessed Nov. 25, 2019).

As one federal district court has recognized, "[w]hether a payment to an unregistered individual runs afoul of FINRA Rule 2040 turns, by the plain terms of the Rule, on whether that individual, 'by reason of receipt of any such payment[ ] and the activities related thereto,' is 'required' to be 'registered as a broker-dealer **under Section 15(a) of the Exchange Act**.'" *Dervan v. Gordian Grp. LLC*, No. 16-CV-1694, 2017 WL 819494, at *9 (S.D.N.Y. Feb. 28, 2017) (*citing* FINRA Rule

2040) (emphasis added). The Southern District of New York further held that whether a party is a broker dealer is a fact-specific inquiry based on the definitions provided in the Exchange Act. *Id.* at *10 (citing 15 U.S.C. § 78c(a)(4)(A), (5)(A)). Thus, FINRA Rule 2040 is bound directly to the Exchange Act, and assessing any potential violation of Rule 2040 by the Principals required the interpretation of several of the Exchange Act's provisions. The same is true of SEC Rule 17a-3 (17 C.F.R. § 240.17a-3) cited by Badgerow in the FINRA arbitration (ROA.1536-37, 174-79), because this regulation enforces the duty established in the Exchange Act, 15 U.S.C. § 78q, that broker-dealers must maintain certain records.

*ii. The questions of federal law presented are substantial.*

The duties in §§ 15 and 17 of the Exchange Act and FINRA Rule 2040 are sufficiently substantial to establish federal question jurisdiction. *See Citadel Sec., LLC v. Chicago Bd. Options Exch., Inc.*, 808 F.3d 694, 702 (7th Cir. 2015); *D'Alessio v. N.Y. Stock Exchange, Inc.*, 258 F.3d 93, 101 (2d Cir. 2001); *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212 (9th Cir. 1998), *abrogated on other grounds by Merrill Lynch*, 136 S. Ct. 1562 (all foregoing cases finding federal subject matter jurisdiction of claims of failures to exercise duties established by the Exchange Act).[7]

[7] The Sixth Circuit case of *Ford v. Hamilton Investments, Inc.*, cited by Badgerow to argue against federal question jurisdiction actually supports the Principals' position on jurisdiction. *Ford v.*

On the substantiality issue, the decision in *Turbeville v. Fin. Indus. Regulatory Auth.*, 874 F.3d 1268, 1275 (11th Cir. 2017) is instructive. In *Turbeville*, the Eleventh Circuit addressed whether Section 15 of the Exchange Act and FINRA rules constituted substantial federal questions meriting the exercise of federal question jurisdiction. FINRA had brought a complaint against Turbeville, a member of a broker firm, for fraud related to his soliciting collateralized mortgages to elderly clients who lacked the sophistication to enter into such financial arrangements, in violation of FINRA rules. *Id.* at 1272. Turbeville filed a separate state court action against FINRA asserting defamation, abuse of process and other claims under Florida state law. *Id.* He alleged that FINRA's investigation into his conduct exceeded FINRA's authority and jurisdiction under its own rules. *Id.* FINRA then removed that action to federal court, citing the alleged violations of FINRA rules as the basis for federal question jurisdiction, since those rules were promulgated pursuant to FINRA's regulatory authority under the Exchange Act.

---

*Hamilton Investments, Inc.*, 29 F.3d 255 (6th Cir. 1994). The Sixth Circuit determined that the district court lacked subject matter jurisdiction because the statement of claim did not allege any violation of securities law. "Nor did either party seek to enforce any liability or duty created by such laws or by the rules and regulations adopted thereunder." Thus, the *Ford* Court rejected the applicability of § 27 of the Act giving federal courts exclusive jurisdiction of violations of the Act or its rules and regulations <u>and</u> of all suits brought to enforce any liability or duty created by the Act or its rules or regulations because no violations were alleged. The exact opposite occurred in this case and the flipside of *Ford*'s rationale supports federal question jurisdiction here. *Id.*

The *Turbeville* Court agreed that the state law claims were rooted in federal law and affirmed the district court' denial of Turbeville's motion to remand the suit to state court. That Court stated:

> [i]n order to determine Turbeville's claims that FINRA's regulatory investigation and disclosure of that investigation on a regulatory database were outside its authority and in violation of FINRA rules and regulations, the Court must necessarily interpret FINRA's rules and regulations. **And because those rules and regulations are promulgated according to the Exchange Act's mandates, their interpretation unavoidably involves answering federal questions**.

*Id.* at 1275 (emphasis added). The Eleventh Circuit further held that permitting state court jurisdiction over FINRA rules and § 15 of the Exchange Act "would undercut the distinctly federal nature of the Exchange Act," such that state courts would be "authorized to supervise FINRA's regulatory conduct and its application of its internal, SEC-approved rules through the vehicle of state tort law. And given [Self-Regulatory Organizations'] front-line role in enforcing federal securities laws, such review would in turn lead to state court supervision of the Exchange Act's securities-regulation regime writ large." *Id.* at 1277. The Eleventh Circuit therefore held that federal question jurisdiction existed and affirmed the district court's denial of remand. *Id.*

Badgerow misguidedly cites to *Doscher* (one of the seminal cases adopting the look through approach for motions to vacate arbitration awards) to argue that a

pure violation of FINRA rules cannot establish federal question jurisdiction. (Appellant Br. at 29.) *Doscher*, 832 F.3d at 375. This argument misinterprets the Second Circuit's position on federal jurisdiction over claims involving the interpretation of FINRA rules, and completely ignores the fact that, on remand, the district court in *Doscher* exercised federal question jurisdiction which was affirmed.

In *Doscher*, the plaintiff asserted two grounds for federal question jurisdiction over his motion to vacate and modify: (1) a FINRA rule violation evident on the face of the motion to vacate, and (2) Exchange Act and SEC rule violations in the underlying arbitration. *Id*. The first ground was an alleged violation of FINRA Rule 13505, providing that "the parties must cooperate to the fullest extent practicable in the exchange of documents and information to expedite the arbitration." *Id.* The claim was that the arbitration panel violated this procedural discovery rule because when the parties did not cooperate during discovery, the arbitrators failed to force their cooperation. *Id.* In support of this first ground for jurisdiction, *Doscher* cited to *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC,* in which the Second Circuit found federal question jurisdiction based on violations of NASDAQ rules. *Id.* (*citing NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1027 (2d Cir. 2014)).

In rejecting the plaintiff's first jurisdictional ground (FINRA rule on the face of the pleadings), the Second Circuit distinguished the violation of FINRA Rule

13505 from the rule in the *NASDAQ* case, based on the fact that FINRA Rule 13505 was a procedural discovery rule and was too attenuated from the self-regulatory organization. *Id*. The *Doscher* Court stated that the rule, if it required anything, required the parties to a FINRA arbitration to cooperate; it did not establish a substantive obligation on FINRA or its members, unlike FINRA Rule 2040 at issue here. *Id*. at 375–76. It was this separation between the duties in the Exchange Act and FINRA Rule 13505 that prevented federal jurisdiction on that ground. *Id.*

However, the significance of *Doscher* is that the Second Circuit determined that the rule at issue in the *NASDAQ* case—which placed a duty on NASDAQ to implement and enforce rules providing for the "maintenance of fair and orderly markets" (an animating goal of federal securities law)—was a *substantive* violation closely related to the duties and obligations provided by the Exchange Act. *NASDAQ*, 770 F.3d at 1021 (*citing* 15 U.S.C. § 78k–1(a)(1)(C)). The court in *Doscher* determined that, unlike FINRA Rule 13505 that governed FINRA's internal discovery procedures, the rule at issue in *NASDAQ* established a sufficiently substantial federal question as a necessary element of the state law claims. *Doscher*, 832 F.3d at 375. The same is true here. FINRA Rule 2040, which Badgerow alleged that the Principals violated, is a substantive rule regulating the manner in which registered broker-dealers can pay unregistered persons or entities, which is closely

related to broker-dealers' duties and obligations under the Exchange Act. Thus, the FINRA rule at issue here is closely akin to the rule in *NASDAQ*.

*Doscher* simply does not create a blanket prohibition against federal question jurisdiction over FINRA rules, and to so assert misreads and disregards the Second Circuit's rationale. Instead, *Doscher* properly applied the traditional "arising under" test to determine whether the FINRA rule before it was sufficiently substantial to establish federal question jurisdiction based on the face of the motion to vacate, and ultimately determined that it was not. The critical portion of *Doscher*, conveniently ignored by Badgerow, was that on remand, the district court exercised federal question jurisdiction where the claims in the underlying arbitration were examined under the *Vaden* look though analysis—which is precisely the situation here.

It is clear that FINRA Rule 2040, under the section titled "Duties and Conflicts," more closely resembles the rules in the *NASDAQ* and *Turbeville* cases than the rule in *Doscher*, because it places substantive obligations on FINRA members and is directly tied to the record-keeping requirements of the Exchange Act that Badgerow has consistently claimed were violated by the Principals. *See* 15 U.S.C. § 78s(g)(1)(B). Specifically, FINRA Rule 2040 prevents payments to non-registered persons in order to enforce § 15 of the Exchange Act by preventing individuals who are not members of FINRA (and therefore not subject to its

mandates) from receiving commission payments or compensation for broker work that is regulated by FINRA. FINRA Rule 2040 was established to prevent deceptive practices, "perfect the mechanism of a free and open market", and "protect investors and the public interest." *See* 15 U.S.C. § 78o-3(b)(6). Just like the rules in *NASDAQ* and *Turbeville,* FINRA Rule 2040 is designed to protect the public interest from deceptive payment practices in direct violation of § 15 of the Exchange Act, and an interpretation of such a crucial substantive rule creates a substantial federal question.

*iii. The District Court's exercise of jurisdiction over alleged violations of federal securities laws properly supports the balance of state and federal judicial responsibilities.*

The alleged violations of FINRA Rule 2040 and §§ 15 and 17 of the Exchange Act asserted in the FINRA arbitration are part of the first-line role of FINRA in enforcing the Exchange Act's edict of protecting the public interest from deceptive practices and maintaining free and open markets. As opined by the Eleventh Circuit in *Turbeville,* allowing a state court to analyze or interpret a FINRA rule regulating the duties placed on broker dealers under the Exchange Act, such as Rule 2040, would result in state court supervision of the Exchange Act's regime and lead to confusion and unpredictability in securities litigation. *Turbeville,* 874 F.3d at 1277.

Such inconsistency and conflict between state and federal rulings would be manifest if this action was remanded to state court. If remanded, the state court will be tasked with reviewing and ruling on a request to vacate the FINRA Award that

has been twice confirmed by a federal District Judge. The state court would inevitably need to interpret federal securities laws to determine whether the Principals misrepresented provisions of the Exchange Act, SEC regulations and FINRA rules to the FINRA panel. It would be, in essence, an appeal of the FINRA Award and the arbitrators' determinations under the guise of claims of "fraud" and "undue means" that the District Court has twice determined were frivolous. (ROA.1458-59 n.3; ROA.19-30584.5848-50 n.6.) Finally, remand in this case could result in conflicting state and federal decisions and a procedural quagmire, the exact evils that *Vaden*, *Doscher* and *McCormick* advised against.

Even more concerning is that, while the Motion to Confirm the FINRA Award under the FAA was pending before the District Court, Badgerow filed the Action to Vacate in state court instead of before the District Court, with absolute knowledge that the FINRA Award was already under consideration by Judge Zainey. (ROA.19-30584.5507-64.) This was not an oversight or mistake, but rather a tactical move by Badgerow. Not only could this gambit have resulted in conflicting decisions regarding the enforceability and finality of the FINRA Award, but it was a blatant attempt by Badgerow to circumvent the District Court's continuing jurisdiction over the FINRA Award, including her request to vacate, as well as to frustrate and undercut the District Court's ruling in the event the Motion to Confirm

was granted. This was not an unintended consequence of some good-faith litigation strategy. This Court should affirm the District Court and uphold the strong interest of federal courts to exercise jurisdiction over controversies involving federal securities law where the alleged obligations and violations derive directly from the Exchange Act, SEC regulations, and FINRA rules.

D. Artful pleading and lack of a federal private cause of action cannot divest the district court of federal question jurisdiction.

*i. Artful pleading to avoid federal jurisdiction.*

Badgerow attempts to skirt the fact that her Action to Vacate is premised on federal law by alleging that her claims were brought under the Louisiana Binding Arbitration Law, La. Rev. Stat. §§ 9:4201, *et seq.*, asserting fraud in connection with a single state law cause of action in her arbitration demand (the whistleblower claim under La. Rev. Stat. § 23:967). (Appellant Br. at 15.) Federal courts do not look to whether an action to vacate cites to the FAA or a state equivalent in determining whether the pleading raises a substantial federal question. Instead, the inquiry is whether the "resolution of the state law cause of action 'necessarily turn[s] on some construction of federal law." *See Harrison v. Christus St. Patrick Hosp.*, 432 F. Supp. 2d 648, 650–51 (W.D. La. 2006) (*citing Bobo*, 359 F. Supp. 2d at 556). In *Harrison*, the District Court denied a motion to remand after holding that plaintiff's artful pleading to avoid removal by intentionally omitting references to federal

healthcare laws that would be required to resolve the state law claims of breach of fiduciary duty by the hospital amounted to forum manipulation. *Id.* at 651.

As Judge Zainey noted (ROA.1460-61 n.6.), Badgerow's reliance on the Louisiana arbitration statute and her state law whistleblower claim in the Action to Vacate was nothing more than artful pleading and a misguided effort to avoid removal. *See id.* at 654 ("An 'independent corollary' to the well-pleaded complaint rule is the 'artful pleading' doctrine. . . . [which] provides that a plaintiff may not defeat removal by omitting to plead necessary federal questions.") (additional citations and quotations omitted). Similar to *Harrison, Bobo* and *Coleman*, the Exchange Act, SEC Regulations and FINRA rules cited by Badgerow in her arbitration demand were an integral part of her state law whistleblower claim. (ROA.1534-42, 168-86, 1562-78; ROA.19-30584.5848-50.)[8]

Indeed, the only "state law" cited by Badgerow in connection with her whistleblower claim was the portion of the Louisiana Administrative Code that

---

[8] In the *Turbine* case cited by Badgerow, the district court rejected the defendants' artful pleading arguments. *Turbine Powered Tech. LLC v. Crowe*, 2018 WL 1041815, at *7 (W.D. La. Feb. 14, 2018). There, unlike here, the plaintiff's state law claims did not turn on an alleged violation of a duty established by a federal law. Rather, the defendants raised a potential federal patent law issue in questioning the plaintiff's representative during a hearing, which the Court found insufficient to support federal question jurisdiction. The same can be said for the *Plains* case cited by Badgerow, where this Court reminded us that an "inevitable defense" based on federal law does not overcome the well-pleaded complaint rule to establish federal jurisdiction. *Plains Capital Bank v. Rogers*, 715 F. App'x 325 (5th Cir. 2017) (whether federal law provided a defense to the defendant was not essential to plaintiff's allegations of breach of contract, and thus "[t]he allegation of federal holder in due course was the 'parry' not the 'thrust' of [the] complaint.") *Id.* at 330.

makes the books-and-records requirements of the Exchange Act applicable to Louisiana broker-dealers (La. Admin. Code Title 10, Pt. XIII, § 1701). (ROA.174-75.) Her bare reference to a state regulation incorporating in whole the requirements of the federal securities laws that formed the crux of her claim cannot override the fact that her claims in the arbitration were dependent on interpretation and application of federal securities laws.[9] *See Merrill Lynch*, 136 S. Ct. at 1569 (finding federal question jurisdiction existed where "a state-law action necessarily depends on a showing that the defendant breached the Exchange Act[.]").

In *Harrison*, the district court held that federal question jurisdiction existed where the state statutes governing tax-exempt charitable institutions, on which the plaintiff's claims were based, incorporated federal Medicare and Medicaid regulations that required an analysis of federal laws to adjudicate the state law claims. *Harrison*, 432 F. Supp. 2d at 649. The *Harrison* court, applying Fifth Circuit precedent following *Merrell Dow*, determined that a federal right or obligation was an essential element of the plaintiff's claim under state law:

> The federal law at issue in this case is not collateral or remote. Rather, the plaintiff's "references" to the defendant's tax-exempt status is central to the dispute. Given the plaintiff's emphasis on the defendants'

[9] Badgerow cites to *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) for the argument that federal question jurisdiction does not exist when the federal claim is merely an alternative theory to the state law cause of action. Contrary to her argument, Badgerow did not present a single viable state law theory for her securities claims in the FINRA arbitration, which are based entirely on §§ 15 and 17 of the Exchange Act, SEC regulations, and FINRA Rule 2040.

> tax-exempt status, her argument that the federal right is not an essential element of her state law claims is unconvincing. Therefore, the federal statute in question is essential to the plaintiff's state law claim.

Id. at 651; *see also Bobo*, 359 F. Supp. 2d at 556. Likewise, the questions of federal securities law at issue in the underlying arbitration, as well as in the Action to Vacate, are not remote or collateral to the dispute; they are the dispute.

As Judge Zainey stated in his Order and Reasons denying Badgerow's Motion to Remand:

> This Court is persuaded that Badgerow cannot deprive the Court of subject matter jurisdiction over an action to vacate the award by stripping off a single state law claim as a basis for attacking the award. Because the award itself included federal claims, the Court is persuaded that federal question jurisdiction applies notwithstanding the artfully pleaded petition.

(ROA.1461.) Badgerow's Action to Vacate "arises under" federal law since the question of whether fraud or undue means occurred necessarily turned on the application of federal securities laws to determine whether the Principals misrepresented to the FINRA Panel that their conduct complied with those laws.

*ii. The absence of a private right of action is not the issue.*

The Principals did not remove this action based on the proposition that Badgerow claimed a federal private right of action under the Exchange Act, SEC regulations, or FINRA rules, though it is worth noting that Badgerow plead and asserted that a private right existed throughout the FINRA arbitration proceeding,

and only took an opposite position when the Instant Suit was removed from state court. Nevertheless, her reliance on *Merrell Dow* to suggest that federal question jurisdiction does not exist unless there is a private right of action under the federal securities law misses the mark.

The Court in *Merrell Dow* did not hold that a private right of action under a federal statute is the sole prerequisite for federal question jurisdiction, and this has been recognized by the Supreme Court and other federal courts in subsequent opinions. *See Grable*, 545 U.S. at 317–18 ("*Merrell Dow* cannot be read whole as overturning decades of precedent, as it would have done by . . . converting a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one."); *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 552 (6th Cir. 2006). Instead, the Court in *Merrell Dow* provided two non-exclusive pathways to establishing federal question jurisdiction. First, whether there exists a private right of action under the federal law in question. And second, relevant to this Appeal, in the absence of a private right of action, whether there are embedded questions of federal law that must be addressed in adjudicating state law claims.[10]

[10] Badgerow's reliance on *Oliver v. Trunkline Gas Co.*, 796 F.2d 86 (5th Cir. 1986) is misplaced. That case involved the issue of whether federal question jurisdiction existed over a breach of contract claim where the contract referenced a federal regulatory statute. *Id.* at 87. Unlike *Oliver*, Badgerow did not assert the breach of a contract that mentions a federal law, but instead brought claims of direct violations of multiple, specific federal securities laws in the arbitration, making the *Oliver* case entirely inapposite.

## II. **Issues of Federal Law Appear on the Face of Badgerow's State Court Pleadings.**

While *Vaden* held that a federal court may 'look through' a motion to compel arbitration (or here, a motion to vacate an arbitration award) to determine whether it is predicated on an action arising under federal law, this Court need only consider the claims on the face of Badgerow's Action to Vacate to find that federal question jurisdiction exists. The Exchange Act provisions were at the forefront of Badgerow's attack on the FINRA Award. (ROA.19-30584.5700-01.)

In her state court pleadings, Badgerow contended that the FINRA Award was procured through fraud and undue means because the Principals knowingly misrepresented broker-dealers' obligations under FINRA Rule 2040 and §§ 15 and 17 of the Exchange Act. (ROA.21-42.) Her request to vacate was thus entirely dependent on the interpretation and application of federal statutes and regulations. The lynchpin of her fraud claim was that (1) § 17A of the Exchange Act and a corresponding SEC regulation, 17 C.F.R. § 240.17a-3(a), required the Principals to have a written AFA compensation agreement for Badgerow, and (2) § 15 of the Exchange Act, SEC regulations and FINRA Rule 2040 prohibited the Principals from routing commission payments through REJ, an unregistered entity. (ROA.33-38.) Badgerow alleged that these actions violated the Exchange Act's recordkeeping requirements. (ROA.33-38.) Badgerow made the exact same fraud

argument in the REJ Suit in opposition to the Motion to Confirm that was pending before Judge Zainey at the time the Action to Vacate was filed in state court. (ROA.19-30584.5700-01.) As Judge Zainey held, all of these arguments were considered and rejected by the FINRA panel during the arbitration. (ROA.19-30584.5848-50.)

The "evidence" of the alleged fraud and undue means by the Principals in concealing and misrepresenting the aforementioned securities violations was a series of proposals from a payroll vendor, EmployShare. (ROA.21-42, 99-113.) As the District Court held in its June 12, 2019 Order and Reasons in the REJ Suit rejecting the fraud claim and confirming the FINRA Award, these proposals were little more than "sales pitches" from a private, third-party company, with no authority in federal securities law, intended to attract the Principals to use its payroll services. (ROA.19-30584.5849-50.) Further, these proposals expressly stated that they were not legal authority and that EmployShare could not make recommendations regarding legal compliance. (ROA.106.) The District Court again properly rejected this baseless attack on the FINRA Award after removal when it confirmed the FINRA Award as to the Principals in this matter. (ROA.1460-61.)

In her Action to Vacate in state court, Badgerow sought a determination that the Principals' arguments and legal positions as to the securities laws in the FINRA

arbitration were so knowingly false as to constitute fraud or undue means. (ROA.21-42.) She had to prove a violation of these federal securities laws to show fraud and undue means. There was absolutely no possible route for the state court to decide the fraud or undue means question without interpreting and analyzing the Exchange Act, SEC regulations, and FINRA rules. This is the precise example provided by the *Merrill Lynch* Court that exhibited federal question jurisdiction. Accordingly, the Action to Vacate was facially premised on federal law, and this Court need not look any further than the four corners of Badgerow's state court pleadings to affirm the District Court's exercise of federal question jurisdiction.

## III. Continuing Jurisdiction Existed Over the Action to Vacate Due To the Earlier Referral to Arbitration of Badgerow's Federal Employment Law Joint Employer Claims.

The FAA, while not an independent basis for federal question jurisdiction, requires that a federal court stay and not dismiss a case that is referred to arbitration which thereafter confers "an independent jurisdictional basis sufficient to permit the federal court to entertain, for example, petitions under §§ 7 and 9–11." *Doscher*, 832 F.3d at 386 (*citing Vaden*, 556 U.S. at 65). This independent jurisdictional basis further underscores the propriety of the District Court's continued exercise of jurisdiction over any efforts by the parties to the FINRA arbitration to seek confirmation or vacation of the award, separate and apart from legal questions of

whether the claims in the underlying arbitration or the Action to Vacate presented substantial questions of federal law necessitating a federal forum.

After the District Court compelled arbitration of Badgerow's federal joint employer claims and stayed the remaining claims against Ameriprise pending arbitration, it held continuing jurisdiction over the FINRA proceeding and Award, including any action to vacate or confirm the FINRA Award. The District Court had a firm understanding of the federal law issues involved in the FINRA arbitration, placing it in the best position to exercise jurisdiction over any post-award motions. The District Court considered extensive argument regarding the FINRA arbitration proceeding and carefully examined the Statement of Claim as amended, the Award itself, portions of the FINRA hearing transcripts, as well as the federal securities laws relied on by Badgerow in considering Badgerow's Opposition to Ameriprise's Motion to Confirm the FINRA Award where she argued that the Principals had committed fraud and undue means. (ROA.19-30584.5848-50.)

The concept of a federal district court's continuing jurisdiction over motions to confirm, modify or vacate an arbitration award when that court has previously exercised jurisdiction over a motion to compel arbitration of the underlying claims was explicitly recognized by the Fourth Circuit in *McCormick*:

> [W]e conclude that if the district court would have jurisdiction over a § 4 petition, were one to be filed, it has jurisdiction over § 10 and § 11 motions, even if a § 4 petition has not been filed.
>
> . . . . The FAA makes § 4 a procedural gate to arbitration, directing courts to compel arbitration if agreed to in writing, and it prescribes the basis of jurisdiction over a § 4 petition, instructing that jurisdiction over such a petition follow the jurisdictional basis for litigating the underlying dispute. *See Vaden*, 556 U.S. at 62–63, 129 S.Ct. 1262. Thus, when the underlying dispute can be litigated in federal court, the federal court has jurisdiction over the § 4 petition to compel arbitration. It follows that if the federal court has jurisdiction to compel the arbitration, it also has jurisdiction to compel the attendance of witnesses at the arbitration under § 7, despite the lack of any "save for" language in that section. And the same conclusion can be reached for jurisdiction over motions to review arbitration awards under §§ 10 and 11. **There is no indication that Congress intended to allow a federal court to compel arbitration under § 4 on the basis that the underlying claim arose under federal law and then to require the parties to go to state court to review the arbitration's procedures or to enforce its awards.**

*McCormick*, 909 F.3d at 682 (emphasis added), *citing* to *Marine Transit Corp v. Drefus*, 284 U.S. 263, 275-76 (1932). As the *McCormick* Court summed up the Supreme Court's holding in *Marine Transit*: "In other words, the court that has jurisdiction to compel arbitration under § 4 has jurisdiction to supervise the arbitration procedures and to confirm, vacate, modify, and enforce the resulting arbitration award." *McCormick*, 909 F.3d at 683. After Judge Zainey ordered the Title VII and the EPA joint employer claims against Ameriprise to arbitration (ROA.19-30584.367-72, 374-75.), and stayed the remaining claims as to Ameriprise, the District Court was vested with continuing jurisdiction over any

post-arbitration motions to confirm, modify, or vacate the FINRA Award. *Id.* For this reason, the District Court properly exercised federal question jurisdiction over the Action to Vacate.

## IV. Badgerow Has Waived the Right to Appeal the Grant of The Principals' Motion to Confirm the FINRA Award and the Dismissal of Her Action to Vacate.

Badgerow failed to assign as error in this Appeal either (1) Judge Zainey's confirmation of the FINRA Award, or (2) Judge Zainey's rejection of her claims of fraud and undue means and the resulting dismissal with prejudice of her Action to Vacate on the merits.[11] Rather, her entire appeal is focused on the District Court's denial of her Motion to Remand. Badgerow provided no briefing at all to address why confirmation of the FINRA Award was erroneous and did not cite to any parts of the Record to support her position.

Further, as Judge Zainey determined in his June 12, 2019 Order and Reasons (ROA.19-30584.5850-51.), Badgerow's Action to Vacate the FINRA Award was facially untimely since it was not filed and served within three months after the

[11] Badgerow references in her Brief several cases that she cited in her briefing in the District Court in support her allegation of fraud and undue means. *See Low v. Minichino*, 267 P.3d 683 (Hi. App. 2011); *Nathan v. Carter*, 372 So. 2d 560 (La. 1979); *Move, Inc. v. Citigroup Global Markets, Inc.*, 840 F.3d 1152 (9th Cir. 2016). These arguments were summarily rejected by the District Court and are not before this Court because Badgerow has not raised the issue of whether the fraud claims were properly dismissed. Out of an abundance of caution, the Principals have herein demonstrated that Judge Zainey properly confirmed the FINRA Award after rejecting Badgerow's fraud claims as unsupported by any evidence and lacking a causal connection.

award was issued by the FINRA panel as required by the FAA. 9 U.S.C. § 12. Badgerow has also failed to challenge this aspect of Judge Zainey's ruling.

Thus, Badgerow has waived any appeal regarding the District Court's confirmation of the FINRA Award and its determinations that there was no valid ground to vacate and that her request to do so was untimely.[12]

## **CONCLUSION**

For the foregoing reasons, Appellees Greg Walters, Thomas Meyer, and Ray Trosclair request that this Court affirm the District Court's denial of Appellant's Motion to Remand, and its grant of Appellees' Motion to Confirm the FINRA Arbitration Award, and its dismissal with prejudice of Appellant's claims in her Action to Vacate.

[12] *See Rittinger v. Healthy Alliance Life Ins. Co.*, 914 F.3d 952, 957 (5th Cir. 2019) ("It is a well-worn principle that failure to raise an issue on appeal constitutes waiver of that argument."); *Willis v. Cleco Corp*, 749 F.3d 314, 319–20 (5th Cir. 2014) (employee waived any claim that district court erred in granting summary judgment to the employer on retaliation and wrongful termination claims because he "[did] not challenge the district court's holding that he failed to establish a *prima facie* case."); *Hornbeck Offshore Servs., LLC v. Salazar*, 713 F.3d 787, 796 (5th Cir. 2013) (appellant's alternative basis for maintaining an attorney fee award was waived because it had not been "meaningfully briefed."); *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 533 (5th Cir. 2012) (failure to adequately target the aspects of the district court's order it believes warrant reversal constitutes a waiver of those aspects.)

Respectfully submitted:

**BREAZEALE, SACHSE & WILSON, L.L.P.**

By: *_/s/ Eve B. Masinter_*
E. Fredrick Preis, Jr. (La. Bar No. 10704)
Eve B. Masinter (La. Bar No. 1218)
Matthew M. McCluer (La. Bar No. 33970)
BREAZEALE, SACHSE & WILSON, L.L.P.
First Bank & Trust Tower
909 Poydras Street, Suite 1500
New Orleans, Louisiana 70112-4004
Telephone: (504) 619-1800
Facsimile: (504) 584-5452
*Counsel for Appellees Greg Walters, Thomas Meyer, and Ray Trosclair*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed with the Fifth Circuit's Electronic Case Filing System, which will provide electronic notice to counsel of record for all represented parties, this 5th day of December, 2019.

*_/s/ Eve B. Masinter_*
Eve B. Masinter
*Counsel for Appellees Greg Walters, Thomas Meyer and Ray Trosclair*

## CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.2 and 32.3, the undersigned certifies that:

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains **10,059** words, not including the parts of the brief exempted by Fed. R. App. P. 32(f); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman font with 14-point type for text and 12-point type for footnotes.

So certified this 5th day of December, 2019.

*/s/ Eve B. Masinter*
Eve B. Masinter
*Counsel for Appellees Greg Walters,*
*Thomas Meyer and Ray Trosclair*